UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRITTANY VANCE, JONATHAN REDDING, on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | CAUSE NO.: |
| vs. | § § § | 5:17-cv-00225 |
| TRANSWORLD SYSTEMS INC.; TURNSTILE CAPITAL MANAGEMENT, LLC, and U.S. BANK, N.A., | § § § § § § | |
| Defendants. | § § | |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiffs Brittany Vance and Jonathan Redding bring this action to secure redress from unlawful credit and collection practices engaged in by defendants Transworld Systems Inc. ("Transworld"), U.S. Bank, N.A. ("U.S. Bank") and Turnstile Capital Management, LLC ("Turnstile"). Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

1

4.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.      The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiffs seek to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

## VENUE AND JURISDICTION

7.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

8.      Venue and personal jurisdiction in this District are proper because:

   a)   Defendants' collection communications were received by plaintiff Brittany Vance within this District;

   b)   Defendants do or transact business within this District.

## PARTIES

9.      Brittany Vance is an individual who resides in San Antonio, Texas.

10.     Jonathan Redding is an individual who resides in McAllen, Texas.

11.     Transworld is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania 19044. It does business in Texas. Its registered agent is CT Corporation System, 1999 Bryan St., Suite 900 Dallas, Texas 75201.

12. Transworld seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

13. Transworld is the successor to NCO Financial Systems, Inc. ("NCO").

14. On information and belief, the spinoff changeover occurred in late 2014 or 2015.

A press release issued in July 2014 stated:

> Expert Global Solutions (EGS), a global leader in the Business Process Outsourcing (BPO) industry and parent company of ARM giant NCO Group, announced Monday that it has entered into an agreement to sell certain segments of its ARM business to private equity firm Platinum Equity. Financial terms of the pending transaction were not disclosed.
>
> The proposed sale of Transworld Systems, Inc. comprises several business segments within EGS' ARM business: Transworld Systems, Education, Attorney Network, Healthcare Bad Debt, Government, and U.S.-based Third Party Collections. Once the transaction is completed the business is expected to operate as Transworld Systems, Inc. (Transworld) going forward. . . . (http://www.insidearm.com/daily/debt-collection-news/ debt-collection/nco-parent-company-selling-transworld-systems-divesting-third-party-collection-unit/)

15. The personnel practices and forms used by NCO in connection with the loans purportedly owned by National Collegiate continue to be used by Transworld.

16. Transworld manages collection agency and attorney networks, which were previously described on its website, http://www.Transworld.com/Services/Agency_Attorney_Network.html, as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading-edge technology and the expertise needed to achieve results.
>
> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. Transworld is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. Transworld has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

17. Transworld's agency and attorney networks are continuations of virtually identical networks set up by NCO.

18. In 2010, NCO's parent company described those agency and attorney networks as follows in a Form 10-K annual report: NCO employees "coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation."

19. As a successor to NCO, Transworld took over NCO's role as default servicing agent for student loans owned by a purported purchaser of defaulted student loans, National Collegiate.

20. Defendant U.S. Bank is a federally chartered corporation with principal offices at 425 Walnut Street, Cincinnati, Ohio 45202. It does business in Texas, and has a branch at 7979 North Eldridge Parkway, Houston, Texas 77041.

21. U.S. Bank was the back-up Special Servicer for each trust established by National Collegiate under a Special Servicing Agreement dated March 1, 2009. When the original Special Servicer, First Marblehead, resigned, U.S. Bank became Special Servicer. (Appendix C.)

22. Under the Special Servicing Agreement, the Special Servicer provides certain services for loans that are more than thirty days delinquent.

23. Loans which are thirty days delinquent are considered to be in default.

24. "Special servicing" is industry jargon for the servicing of defaulted loans.

25. U.S. Bank contracted with Transworld to act as Sub-Servicer and, with Turnstile, to act as Special Sub-Servicer for each National Collegiate trust. (Appendix C.)

26. Defendant Turnstile is a limited liability company organized under Delaware law with principal offices at 402 West Broadway, Suite 2000, San Diego, California 92101. It does

business in Texas. Its registered agent and office is National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201.

27. Turnstile is engaged in the business of collecting defaulted student loans owed to others.

28. Turnstile uses the mails and telephone system in conducting its business.

29. On information and belief, Turnstile retained Transworld to collect debts from plaintiffs.

30. Each defendant is a "debt collector" as that term is defined in 15 U.S.C. §1692a.

**FACTS**

31. Defendants have been seeking to collect from plaintiffs alleged private student loan debts, incurred for personal, family or household purposes.

32. On or about January 10, 2017, Transworld sent plaintiff Brittany Vance a letter seeking to collect an alleged student loan debt. A copy of this letter is attached as Appendix A. (There is nothing on the back of the letter, notwithstanding the statement in the letter.)

33. On or about January 10, 2017, Transworld sent plaintiff Jonathan Redding a letter seeking to collect on an alleged student loan debt. A copy of this letter is attached as Appendix B. (There is nothing on the back of the letter, notwithstanding the statement in the letter.)

34. Appendices A and B are the initial letters each plaintiff received from Transworld regarding alleged student loan debts.

35. Appendices A and B are form letters.

36. On information and belief, Appendices A and B are letters that Transworld uses as the initial letter it sends to collect on private student loan debts.

37. Appendices A and B were sent by Transworld acting in concert with U.S. Bank and Turnstile.

38. <u>Appendices A and B</u>:

   A. State that "this amount is due in full."

   B. State that the balance may increase due to the addition of interest;

   C. Invite plaintiffs to arrange to pay the alleged debts out of the proceeds of any tax refund.

39. On January 10, 2017, more than four years had elapsed since plaintiffs had defaulted on the loans that are the subjects of <u>Appendices A and B</u>.

40. Plaintiffs had not made any payments on the loans in the four years prior to January 10, 2017.

41. The statute of limitations on a private student loan debt in Texas is four years.

42. <u>Appendices A and B</u> do not disclose that the respective debts are no longer judicially enforceable.

43. Consumers often do not realize that the statute of limitations may bar judicial enforcement of a private student loan debt. (There is no statute of limitations applicable to many federal student loan debts.)

44. Defendants regularly attempt to collect private student loan debts which are no longer judicially enforceable because the statute of limitations has run.

45. Defendants regularly send letters in the form of <u>Appendix A</u> to collect on private student loan debts in which the statute of limitations has run.

## COUNT I – FDCPA

46. Plaintiffs incorporate paragraphs 1-45.

47. <u>Appendices A and B</u> imply that the alleged debt is judicially enforceable.

48. Nothing in <u>Appendices A and B</u> disclosed that the debts were barred by the statute of limitations or no longer judicially enforceable.

6

49. It is the policy and practice of defendants to send and cause the sending of letters seeking to collect time-barred private student loan debts that do not disclose that the debt is time-barred.

50. The Federal Trade Commission has determined (http://www.ftc.gov/opa/2012/01/asset.shtm) that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (http://www.ftc.gov/opa/2012/01/asset.shtm)

51. In early 2012, the FTC entered into a consent decree with Asset Acceptance, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC,* Case No. 8:12-cv-182-T-27EAJ (M.D. Fla.).

52. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . . ." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

53.     On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf.  The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

54.     The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

55.     Courts have also held that the offer of a settlement or similar implication that a time-barred debt is legally enforceable is misleading. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015); *McMahon v. LVNV, LLC*, 744 F.3d 1010 (7th Cir. 2014).

56.     Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, by sending consumers letters in the form represented by <u>Appendices A and B</u> opting to collect time-barred private student loan debts without disclosure of that fact.

57.     Section 1692e provides:
> **§ 1692e.     False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.**

8

>**Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
>>**(2)    The false representation of--**
>>
>>>**(A)    the character, amount, or legal status of any debt; . . .**
>>
>>**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>>
>>**(10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

58.   Section 1692f provides:

>**§ 1692f.    Unfair practices [Section 808 of P.L.]**
>
>**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

## CLASS ALLEGATIONS

59.   Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

60.   The class consists of (a) all individuals with Texas addresses (b) to whom Transworld (c) sent a letter in the form of <u>Appendices A and B</u> (d) to collect a private student loan debt on which the last payment or date of default (whichever is later) had occurred more than four years prior to the letter, (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

61.   On information and belief, the class is so numerous that joinder of all members is not practicable.

62.   There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether <u>Appendices A and B</u> violate the FDCPA.

63. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

64. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

65. A class action is superior for the fair and efficient adjudication of this matter, in that:

    (1) Individual actions are not economically feasible;

    (2) Members of the class are likely to be unaware of their rights;

    (3) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members and against defendants for:

    (a) Statutory damages;

    (b) Actual damages, including all amounts paid on time-barred debts;

    (c) Attorney's fees, litigation expenses and costs of suit;

    (d) Such other and further relief as the Court deems proper.

DATED: March 21, 2017

    Respectfully submitted,

    s/ Daniel J. Ciment
    Daniel J. Ciment
    Attorney-in-Charge
    Texas Bar No. 24042581
    HESTON CIMENT, PLLC
    607 Park Grove Drive
    Suite B
    Katy, Texas 77450

                Telephone: (713) 270-4833
                Facsimile: (713) 583-9296
                Daniel@HestonCiment.com

                s/ James O. Latturner
                James O. Latturner
                Illinois Bar No. 00472840
                EDELMAN, COMBS, LATTURNER
                    & GOODWIN, LLC
                20 South Clark Street, Suite 1500
                Chicago, Illinois  60603
                312-739-4200
                312-419-0379 (FAX)
                jlatturner@edcombs.com

                s/ Francis R. Greene
                Francis R. Greene
                Illinois Bar No. 6272313
                EDELMAN, COMBS, LATTURNER
                    & GOODWIN, LLC
                20 South Clark Street, Suite 1500
                Chicago, Illinois 60603
                (312) 739-4200
                (312) 419-0379 (FAX)
                fgreene@edcombs.com

Pro hac vice admission to be sought:

Daniel A. Edelman
Illinois Bar No. 00712094
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com