# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRITTANY VANCE, JONATHAN REDDING, JULIE THOMASON, and MARSHA MCCLESKEY on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | CAUSE NO.: 5:17-CV-00225-DAE |
| vs. | § § § | |
| TRANSWORLD SYSTEMS INC.; TURNSTILE CAPITAL MANAGEMENT, LLC, and U.S. BANK, N.A., | § § § § § | |
| Defendants. | § § | |

## THIRD AMENDED COMPLAINT – CLASS ACTION

## INTRODUCTION

1.     Plaintiffs Brittany Vance, Jonathan Redding, Julie Thomason, and Marsha McCleskey bring this action to secure redress from unlawful credit and collection practices engaged in by defendants Transworld Systems Inc. ("Transworld"), U.S. Bank, N.A. ("U.S. Bank") and Turnstile Capital Management, LLC ("Turnstile"). Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2.     The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.     In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability,

to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.      The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Young v. Asset Acceptance, LLC*, Civil Action No.: 3:09-CV-2477-BH, 2011 WL 618274, *2 (N.D. Tex. 2011).

6.      Plaintiffs seek to enforce those policies and civil rights which are expressed through the FDCPA.

## VENUE AND JURISDICTION

7.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, and 28 U.S.C. §1337.

8.      Venue and personal jurisdiction in this District are proper because:

a.      Defendants' collection communications were received by plaintiff Brittany Vance within this District;

b.      Defendants do or transact business within this District.

## PARTIES

**Plaintiffs**

9.      Brittany Vance is an individual who resides in San Antonio, Texas.

10.     Jonathan Redding is an individual who resides in McAllen, Texas.

11.     Julie Thomason is an individual who resides in Conroe, Texas.

12.     Marsha McCleskey is an individual who resides in Bedford, Texas.

**Defendant U.S. Bank**

13.     Defendant U.S. Bank is a federally chartered corporation with principal offices at 425 Walnut Street, Cincinnati, Ohio 45202. It does business in Texas, and has a branch at 7979 North Eldridge Parkway, Houston, Texas 77041.

14.     U.S. Bank was the "Back-Up Special Servicer" for certain delinquent and defaulted private student loans held in trusts commonly known as the "National Collegiate" student loan trusts. When the original Special Servicer, First Marblehead Education Resources, Inc. resigned, U.S. Bank became the Special Servicer. (Appendix F.)

15.     The National Collegiate student loan trusts in existence as of March 1, 2009 are listed in Schedule A to the "Special Servicing Agreement" attached as Appendix E.

16.     "Special servicing" is industry jargon for the servicing of delinquent or defaulted loans.

17.     As the Special Servicer, U.S. Bank provides certain services for loans that are either delinquent for more than thirty days or deemed to be in default. (Appendix E, Section 1.)

18.     Among other services, U.S. Bank:

a.     Retains debt collection agencies known as "Subservicers" to  enforce and collect delinquent and defaulted student loans;

b.     Audits the Subservicers and provided oversight with respect to account management, litigation assistance, and settlement strategies;

c.     Replaces any Subservicer whose performance is deficient;

d.     Requires each Subservicer to submit monthly reports relating to the loans on which the Subservicer is collecting;

3

d.      For defaulted loans which are 180 days delinquent, cause the Subservicer to reassign accounts into a default collection "queue" for collection efforts;

d.      Retains legal counsel to pursue enforcement and collection of delinquent and defaulted loans through litigation and bankruptcy or probate proceedings;

e.      Negotiates settlements of any claims with respect to defaulted loans when such settlements are likely to result in a greater amount collected than if forbearance, payment arrangements, or other accommodations are extended to the borrower;

f.      Creates and maintains accounts for the deposit of money collected by Subservicers.

(Appendix E, Section 2, (i)-(iv), (vi), (ix), (x) (xii), (xv), (xvi)).

19.      In its capacity as a Special Servicer for the delinquent and defaulted private student loans in the National Collegiate trusts, U.S. Bank is a debt collector as defined in the FDCPA, as it attempts to collect directly or indirectly on delinquent and defaulted student loans owed to others, using the mail, telephone, and electronic wire services to do so, all in the course of trade and commerce.

**Defendant Transworld**

20.      Transworld is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania 19044. It does business in Texas. Its registered agent is CT Corporation System, 1999 Bryan St., Suite 900 Dallas, Texas 75201.

21.      Transworld contracted with U.S. Bank to act as "Sub-Servicer" for the delinquent

and defaulted private student loans in the National Collegiate trusts. (<u>Appendix F</u>, ¶16.)

22. Transworld is the successor to NCO Financial Systems, Inc. ("NCO") in the role of Sub-Servicer for the delinquent and defaulted private sudent loans in the National Collegiate trusts.

23. On information and belief, the spinoff changeover occurred in late 2014 or 2015. A press release issued in July 2014 stated:

> Expert Global Solutions (EGS), a global leader in the Business Process Outsourcing (BPO) industry and parent company of ARM giant NCO Group, announced Monday that it has entered into an agreement to sell certain segments of its ARM business to private equity firm Platinum Equity. Financial terms of the pending transaction were not disclosed.

> The proposed sale of Transworld Systems, Inc. comprises several business segments within EGS' ARM business: Transworld Systems, Education, Attorney Network, Healthcare Bad Debt, Government, and U.S.-based Third Party Collections. Once the transaction is completed the business is expected to operate as Transworld Systems, Inc. (Transworld) going forward. . . . (<u>http://www.insidearm.com/daily/debt-collection-news/debt-collection/nco-parent-company-selling-transworld-systems-divesting-third-party-collection-unit/</u>)

24. Transworld manages collection agency and attorney networks, which were previously described on its website,

<u>http://www.Transworld.com/Services/Agency_Attorney_Network.html</u>, as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading-edge technology and the expertise needed to achieve results.

> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. Transworld is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. Transworld has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

25.     Transworld's agency and attorney networks are continuations of virtually identical networks set up by NCO.

26.     In 2010, NCO's parent company described those agency and attorney networks in a Form 10-K annual report: NCO employees "coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation."

27.     As a "Sub-Servicer", Transworld endeavors to collect on the defaulted student loans in the National Collegiate trusts listed in Schedule A to Appendix E or subsequently formed trusts, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

28.     Transworld is a debt collector as defined in the FDCPA, 15 U.S.C. §1692a.

**Defendant Turnstile**

29.     Defendant Turnstile is a limited liability company organized under Delaware law with principal offices at 402 West Broadway, Suite 2000, San Diego, California 92101. It does business in Texas. Its registered agent and office is National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201.

30.     Turnstile contracted with U.S. Bank to act as "Special Sub-Servicer" for the delinquent and defaulted private student loans in the National Collegiate trusts. (Appendix F, ¶16.)

31.     As the Special Sub-Servicer, Turnstile collects directly and indirectly on delinquent and defaulted student loans in the National Collegiate trusts listed in Schedule A to Appendix E or subsequently formed trusts, using the mail, telephone, and electronic wire

services to do so, all in the course of trade and commerce.

32.     Turnstile is a "debt collector" as that term is defined in the FDCPA, 15 U.S.C. §1692a.

**FACTS**

33.     Defendants have been seeking to collect from plaintiffs alleged private student loan debts, incurred for personal, family or household purposes.

34.     On or about January 10, 2017, Transworld sent plaintiff Brittany Vance a letter seeking to collect an alleged student loan debt. A copy of this letter is attached as <u>Appendix A</u>. (There is nothing on the back of the letter, notwithstanding the statement in the letter.)

35.     In addition to private student loans, Vance also financed her education with federal student loans.

36.     On or about January 10, 2017, Transworld sent plaintiff Jonathan Redding a letter seeking to collect on an alleged student loan debt. A copy of this letter is attached as <u>Appendix B</u>. (There is nothing on the back of the letter, notwithstanding the statement in the letter.)

37.     On or about January 10, 2017, Transworld sent plaintiff Julie Thomason a letter seeking to collect on an alleged student loan debt. A copy of this letter is attached as <u>Appendix C.</u> (There is nothing on the back of the letter, notwithstanding the statement in the letter.)

38.     On or about February 23, 2017, Transworld sent plaintiff Marsha McCleskey a letter seeking to collect on an alleged student loan debt. A copy of this letter is attached as <u>Appendix D.</u>

39.     The student loan was taken out to finance the education of plaintiff McCleskey's daughter, Meghan McCleskey, who also had taken out federal student loans to finance her

education.

40.     Appendices A-D are the initial letters each plaintiff received from Transworld regarding alleged student loan debts.

41.     Appendices A-D are form letters.

42.     On information and belief, Appendices A-D are letters that Transworld uses as the initial letters it sends to collect on private student loan debts.

43.     Appendices A-D were sent by Transworld acting in concert with and pursuant to an agreement with U.S. Bank and, on information and belief, an agreement with Turnstile.

44.     Appendices A-C:

    a.     State that "this amount is due in full."

    b.     State that the balance may increase due to the addition of interest;

    c.     Invite plaintiffs to arrange to pay the alleged debts out of the proceeds of any tax refund.

45.     Appendix D:

    a.     Requests payment in full; and

    b.     States the amount may increase due to the addition of interest.

46.     On January 10, 2017, more than four years had elapsed since plaintiffs Vance, Redding, and Thomason had defaulted on the loans that are the subjects of Appendices A-C.

47.     Plaintiffs Vance, Redding, and Thomason had not made any payments on the loans in the four years prior to January 10, 2017.

48.     On February 23, 2017, more than four years had elapsed since the loan that is the subject of Appendix D went into default.

49.     Plaintiff McCleskey had not made any payments on the loan in the four years

prior to February 23, 2017.

50.     The statute of limitations on a private student loan debt in Texas is four years.

51.     <u>Appendices A-D</u> do not disclose that the respective debts are no longer judicially enforceable.

52.     Consumers often do not realize that the statute of limitations may bar judicial enforcement of a private student loan debt. (There is no statute of limitations applicable to many federal student loan debts.)

53.     Defendants regularly attempt to collect private student loan debts which are no longer judicially enforceable because the statute of limitations has run.

54.     Defendants regularly send letters in the form of <u>Appendices A-D</u> to collect on private student loan debts in which the statute of limitations has run.

## COUNT I – FDCPA

55.     Plaintiffs incorporate paragraphs 1-54.

56.     <u>Appendices A-D</u> imply that the alleged debt is judicially enforceable.

57.     Nothing in <u>Appendices A-D</u> disclosed that the debts were barred by the statute of limitations or no longer judicially enforceable.

58.     It is the policy and practice of defendants to send and cause the sending of letters seeking to collect time-barred private student loan debts that do not disclose that the debt is time-barred.

59.     The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt."

(http://www.ftc.gov/opa/2012/01/asset.shtm)

60.     In early 2012, the FTC entered into a consent decree with Asset Acceptance, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC,* Case No. 8:12-cv-182-T-27EAJ (M.D. Fla.).

61.     On October 1, 2012,  the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred.  2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures  concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . . ."  (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

62.     On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

63. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

64. Courts have also held that the offer of a settlement or similar implication that a time-barred debt is legally enforceable is misleading. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015); *McMahon v. LVNV, LLC*, 744 F.3d 1010 (7th Cir. 2014).

65. Defendants violated the FDCPA because they failed to inform plaintiffs in a clear an unambiguous manner that the law prohibits defendants from judicially enforcing their debts because the statute of limitations has run. *Pantoja v. Portfolio Recovery Associates*, 852 F.3d 679, 687 (7th Cir. 2017). Plaintiffs have a right to know that their debts are no longer judicially enforceable and were damaged as a result of defendants' failure to inform them of that fact.

66. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, by sending consumers letters in the form represented by Appendices A-D opting to collect time-barred private student loan debts without disclosure of that fact.

67. Section 1692e provides:

> **§ 1692e.  False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)  The false representation of--**

**(A)** the character, amount, or legal status of any debt; . . .

**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

68. Section 1692f provides:

**§ 1692f.** Unfair practices [Section 808 of P.L.]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

## CLASS ALLEGATIONS

69. Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

70. The class consists of (a) all individuals with Texas addresses (b) to whom Transworld (c) sent a letter in the form of <u>Appendices A-D</u> (d) to collect a private student loan debt on which the last payment or date of default (whichever is later) had occurred more than four years prior to the letter, (e) which letter was sent on or after March 21, 2016 and on or before April 11, 2017.

71. On information and belief, the class is so numerous that joinder of all members is not practicable.

72. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether <u>Appendices A-D</u> violate the FDCPA.

73. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

12

74.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

75.     A class action is superior for the fair and efficient adjudication of this matter, in that:

(1)     Individual actions are not economically feasible;

(2)     Members of the class are likely to be unaware of their rights;

(3)     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members and against defendants for:

(a)     Statutory damages;

(b)     Actual damages, including all amounts paid on time-barred debts;

(c)     Attorney's fees, litigation expenses and costs of suit;

(d)     Such other and further relief as the Court deems proper.

DATED: July 31, 2017

Respectfully submitted,

/s/ Daniel A. Edelman
Daniel A. Edelman
Illinois Bar No. 00712094
Francis R. Greene
Illinois Bar No. 6272313
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200

(312) 419-0379 (FAX)
courtecl@edcombs.com
fgreene@edcombs.com

Daniel J. Ciment
Attorney-in-Charge
Texas Bar No. 24042581
HESTON CIMENT, PLLC
607 Park Grove Drive
Suite B
Katy, Texas 77450
Telephone: (713) 270-4833
Facsimile: (713) 583-9296

Jerry J. Jarzombek
Texas Bar No. 10589050
THE LAW OFFICE OF JERRY JARZOMBEK, PLLC
301 Commerce Street, Suite 2900
Fort Worth, Texas 76102
817-348-8325
817-348-8328 Facsimile
jerryjj@airmail.net

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Illinois Bar No. 00712094
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

P.O. Box 15618
Dept. 926
Wilmington, DE 19850-5618
926.6808.EDGV1

||||||||||||||||||||||||||||||||||||||||||||

Calls to or from this company may be monitored
or recorded.

|·|·|||··|··||||||||·|··||·|||···||·||||·|·|||·||·|·||·|   97608 - 215
BRITTANY VANCE

000385

TRANSWORLD SYSTEMS INC.
500 Virginia Dr Suite 514
Ft Washington, PA 19034
800-825-6523

Date: January 10, 2017
Our Account #: ███6450
Creditor: NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2007-1
School Name: UNIVERSITY OF TH
Lender Name: N/A
Default Date: 10/03/11
Creditor's Account #: XXXXX████1000
Principal: $29756.27
Interest: $5786.07
Current Interest Rate: 4.01
Collection Costs/Charges: $0.00
Other: $0.00
Current Balance Due: $35542.34
This Balance is a Sum of Balances from 1 Account(s).
Notice: See Reverse Side For Important Information.

The creditor, noted above, has placed your defaulted loan(s) with our agency for collection.

The creditor has informed us that this amount is due in full.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Office Hours: Monday through Thursday 8:00am to 9:00pm and Friday 8:00am to 5:00pm (ET).

The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

If you have an income tax refund, perhaps you can use the proceeds to pay this account.

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at https://www.transworldpayments.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW)
--------------------------------------------------------------------------------

| Our Account # | Current Balance Due |
|---|---|
| ███6450 | $35542.34 |

BRITTANY VANCE

Payment Amount ⬇

$ ☐☐☐☐☐ . ☐☐

Check here if your address has changed and print
your new address in the space provided below. ☐

Make Payment To:

TRANSWORLD SYSTEMS INC.
P.O. BOX 15109
WILMINGTON, DE 198505109

1 of 1

0926 000064656450 1 03554234 1 0000 0

P6808
215

# APPENDIX B

P.O. Box 15618
Dept. 926
Wilmington, DE 19850-5618
926.6808.EDGV1



Calls to or from this company may be monitored
or recorded.

JONATHAN REDDING

000393

97608 - 223

TRANSWORLD SYSTEMS INC.
500 Virginia Dr Suite 514
Ft Washington, PA 19034
800-825-6523

Date: January 10, 2017
Our Account #: ■■■6236
Creditor: NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2004-1
School Name: UNIVERSITY OF TE
Lender Name: N/A
Default Date: 08/01/12
Creditor's Account #: XXXXX■■■■■■1000
Principal: $6196.46
Interest: $1345.43
Current Interest Rate: 5.21
Collection Costs/Charges: $0.00
Other: $0.00
Current Balance Due: $7541.89
This Balance is a Sum of Balances from 1 Account(s).
Notice: See Reverse Side For Important Information.

The creditor, noted above, has placed your defaulted loan(s) with our agency for collection.

The creditor has informed us that this amount is due in full.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Office Hours: Monday through Thursday 8:00am to 9:00pm and Friday 8:00am to 5:00pm (ET).

The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

If you have an income tax refund, perhaps you can use the proceeds to pay this account.

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at https://www.transworldpayments.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW)

--------------------------------------------------------------------------------

| Our Account # | Current Balance Due |
|---|---|
| ■■6236 | $7541.89 |

JONATHAN REDDING

Payment Amount ⬇

$

Check here if your address has changed and print
your new address in the space provided below.

1 of 1

Make Payment To:

TRANSWORLD SYSTEMS INC.
P.O. BOX 15109
WILMINGTON, DE 198505109

PAP-301-A-0

0926 000064656236 1 00754189 1 0000 8

P6808
223

# APPENDIX C

P.O. Box 15618
Dept. 926
Wilmington, DE 19850-5618
926.6808.EDGV1

TRANSWORLD SYSTEMS INC.
500 Virginia Dr Suite 514
Ft Washington, PA 19034
800-825-6523

Calls to or from this company may be monitored
or recorded.


JULIE THOMASON

97608 - 187

000357

Date: January 10, 2017
Our Account #: ▆▆▆▆6437
Creditor: NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2007-1
School Name: LONE STAR COLLEG
Lender Name: N/A
Default Date: 03/01/12
Creditor's Account #: XXXXX▆▆▆▆1000
Principal: $6282.74
Interest: $1897.33
Current Interest Rate: 7.87
Collection Costs/Charges: $0.00
Other: $0.00
Current Balance Due: $8180.07
This Balance is a Sum of Balances from 1 Account(s).
Notice: See Reverse Side For Important Information.

The creditor, noted above, has placed your defaulted loan(s) with our agency for collection.

The creditor has informed us that this amount is due in full.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Office Hours: Monday through Thursday 8:00am to 9:00pm and Friday 8:00am to 5:00pm (ET).

The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

If you have an income tax refund, perhaps you can use the proceeds to pay this account.

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at https://www.transworldpayments.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

**PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW)**

-----------------------------------------------------------------------------------------------------------------

| Our Account # | Current Balance Due |
|---|---|
| ▆▆6437 | $8180.07 |

JULIE THOMASON

Payment Amount ⬇

$ ▪

Check here if your address has changed and print
your new address in the space provided below.

Make Payment To:

TRANSWORLD SYSTEMS INC.
P.O. BOX 15109
WILMINGTON, DE 198505109

1 of 1

PAP-301-A-0

0926  000064656437  1  00818007  1  0000  1

P6808
187

# APPENDIX D

P.O. Box 15618
Dept. 926
Wilmington, DE 19850-5618
926.6809.EDGV1

Calls to or from this company may be monitored
or recorded.



MARSHA I                                    97608 - 78


CC0120

TRANSWORLD SYSTEMS INC.
500 Virginia Dr Suite 514
Ft Washington, PA 19034
800-825-6523

Date: February 23, 2017
Our Account #: ████6255
Creditor: NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2007-3
School Name: ANGELO STATE UNI
Lender Name: UFSB
Default Date: 08/01/12
Creditor's Account #: XXXXX████████1000
Principal: $39916.99
Interest: $13,494.80
Current Interest Rate: N/A
Collection Costs/Charges: $0.00
Other: $0.00
Current Balance Due: $53411.79

Dear MARSHA MCCLESKEY:

The defaulted student loan(s) for which you cosigned has/have been placed with our office for collection.

Please forward payment.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Office Hours: Monday through Thursday 8:00am to 9:00pm and Friday 8:00am to 5:00pm (ET).

The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at https://www.transworldpayments.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

For Texas Residents, visit our website at www.ncogroup.com to review your rights under Federal and Texas law.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW)
-------------------------------------------------------------------------------------

| Our Account # | Current Balance Due |
|---|---|
| ████6255 | $53411.79 |
| MARSH/ | |

Payment Amount ⬇

$

Make Payment To:

TRANSWORLD SYSTEMS INC.
P.O. BOX 15109
WILMINGTON, DE 198505109

.0926 00006465255 1 05341179 1 0001 4                                    P6809

# APPENDIX E

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 1 of 34   PageID #: 193
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 11 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/03/2006 1:08:15 PM
Ramsey County, MN

*Execution version*

## SPECIAL SERVICING AGREEMENT

This Special Servicing Agreement, dated as of March 1, 2009 (this "Agreement"), is entered into by and among First Marblehead Education Resources, Inc. ("FMER"), as the Special Servicer (together with its successors and assigns, the "Special Servicer"), U.S. Bank National Association, as the Back-Up Special Servicer (the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A attached hereto (the "Trusts").

WHEREAS, the Special Servicer, and other subservicing agents appointed from time to time by the Special Servicer, as provided herein, are experts in the management of student loan collections and default prevention services;

WHEREAS, each of the Trusts is appointing the Special Servicer as a Servicer under each Trust's respective Indenture, as listed on Schedule A attached hereto (the "Indentures"), to perform certain limited duties with respect to student loans (the "Student Loans") owned by the Trusts, including Student Loans that are delinquent or defaulted loans ("Delinquent Loans" and "Defaulted Loans," as defined below).

WHEREAS, the Trusts are appointing the Back-Up Special Servicer to serve in such capacity pursuant to the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Indentures. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Defaulted Loan" means any Student Loan as to which any of the following: (a) a TERI Guaranty Event has occurred, (b) the Servicer has determined that a TERI Guaranty Event has occurred and has submitted documents supporting that determination to the Special Servicer or (c) if the Student Loan is no longer subject to a valid TERI Guaranty Agreement, the Servicer has determined that a borrower has defaulted under his respective student loan credit agreement and has notified the Special Servicer of such occurrence.

"Delinquent Loan" means a Student Loan that is at least 31 days past due but is not yet a Defaulted Loan.

Section 2.    Appointment; Special Servicing Duties.

A.    Appointment. Each of the Trusts hereby hires, designates and appoints the Special Servicer as a Servicer under each Trust's respective Indenture to perform the special servicing duties (as defined below), and the Special Servicer accepts such appointment and agrees to perform such duties with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, in accordance with the terms of this Agreement and each Indenture.

B.    Special Services. The Special Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee Early Awareness Services (as

EXHIBIT
B

Filed in Second Judicial District Court
2/17/2016 1:06:15 PM
Ramsey County, MN

defined below) with respect to Student Loans as generally described below and the enforcement and collection of Delinquent Loans and Defaulted Loans to maximize the collection of amounts payable on the Student Loans (collectively, the "Special Services"), including without limitation:

(i)     Retaining and entering into agreements with licensed collection agencies and other legally authorized persons (the "Subservicers") engaged in providing default prevention services, in form and substance satisfactory to the Special Servicer, pursuant to which the Subservicers, for and on behalf of the applicable Trust, will contact borrowers with respect to the Student Loans, including without limitation borrowers with respect to Delinquent Loans or Defaulted Loans, and seek enforcement and collection of such Loans;

(ii)    At the sole discretion of the Special Servicer, (a) performing periodic audits of Subservicers for compliance and performance reviews and (b) providing oversight of the activities of Subservicer with regard to account management, litigation assistance, and/or settlement strategies;

(iii)   Replacing any Subservicer who, in the sole judgment of the Special Servicer, is deemed to be deficient or negligent in performing the duties outlined in its subservicing agreement with the Special Servicer;

(iv)    Requiring in the applicable subservicing agreement, the Subservicers to provide certain monthly reports to the Special Servicer with respect to Student Loans serviced by such Subservicer, in each case, in form and substance satisfactory to the Special Servicer;

(v)     With respect to Student Loans, retaining one or more Subservicers to perform Early Awareness Services. "Early Awareness Services" shall mean such services determined by the Special Servicer to be desirable to reduce the number and percentage of student borrowers becoming subsequently delinquent in the repayment process, including without limitation, services that are intended to alert student borrowers and coborrowers as to their repayment obligations, available borrower benefits (such as ACH automatic payments) and contact information for the Servicer. Early Awareness Services may include both telephonic and mail contacts, as well as address verification and skip tracing;

(vi)    With respect to Delinquent Loans, the Special Servicer shall transfer all collection activities from the applicable Servicer to Subservicers who will seek enforcement and collection of such Loans and provide monthly reports to the Special Servicer in form and substance satisfactory to the Special Servicer, provided that the Special Servicer shall not be required to transfer such collection activities if First Marblehead Data Services, Inc. ("FMDS") is the Administrator and FMDS determines that collections would not be maximized on such Delinquent Loans if the collection activities were transferred to Subservicers;

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 3 of 34   PageID #: 195
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 13 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

(vii)    With respect to Defaulted Loans, review claim packages as described in subparagraph (xi);

(viii)    With respect to Defaulted Loans that are the subject of a TERI Guaranty Event, as determined by the Special Servicer: (a) submit a claim under the Guaranty Agreement to TERI for the benefit of the Trust, and/or (b) refer the loan for collection by a Subservicer on behalf of such Trust;

(ix)    With respect to Defaulted Loans that are over 180 days delinquent, the Special Servicer will cause the Subservicer to (a) roll or reassign accounts from 180 days delinquent into a default recovery queue for collection efforts and (b) remit weekly to the FMER Collection Account (as hereinafter defined) for the receipt of collections from a Subservicer for the benefit of the respective trusts as their interest may appear, cash collected on all Defaulted Loans serviced by such Subservicer for the Trusts.

(x)    Establishing and maintaining an account or accounts ("FMER Collection Account") in the name of the Indenture Trustee (or its agent or custodian) for benefit of the applicable secured parties of the Trusts under the respective Indentures for the deposit by a Subservicer of net collections on all Defaulted Loans serviced by such Subservicer for the respective Trust and in connection therewith preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi)    Reviewing claim packages (which packages shall contain the information, reports and documents required in the Program Manual for the related TERI Guaranty Agreement and identified on the checklist or lists attached hereto as Exhibit I) prepared by the Servicer with respect to Defaulted Loans to confirm, on the basis of such review, that (a) Servicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii)    Receiving reports from Servicers and Subservicers related to payments with respect to Delinquent Loans and Defaulted Loans and updating records with respect to Student Loans as interest and other charges accrue and amounts are collected;

(xiii)    Remitting or causing the Subservicer to remit net collections received on Defaulted Loans to the FMER Collection Account;

(xiv)    With respect to Defaulted Loans, the Special Servicer shall transfer all collection activities to Subservicers, provided that the Special Servicer shall not be required to transfer such collection activities if FMDS is the Administrator and FMDS determines that it is likely that collections would

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 4 of 34   PageID #: 196
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 14 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/17/2006 1:08:15 PM
Ramsey County, MN

not be maximized on such Defaulted Loans if the collection activities were transferred to Subservicers;

(xv)   Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Delinquent Loans and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xvi)  Negotiating any settlement or compromise of any claim with respect to a Defaulted Loan, which in the reasonable judgment of the Special Servicer or the applicable Subservicer is more likely to produce greater proceeds of collection than by virtue of a forbearance, payment arrangement or other accommodation with the borrower.

Section 3.   Incorporation.   As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Special Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Special Servicer or the Back-Up Special Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.   Subservicers.   In carrying out its duties under this Agreement with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, the Special Servicer may retain and employ Subservicers to perform any of the Special Services with respect to the Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Student Loans, the costs of such services with respect to Delinquent Loans shall be subject to the Monthly Reimbursement Limit described in Section 5(B) below.

Section 5.   Servicing Fee.   As compensation for the performance of the Special Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Special Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.   A fixed fee at a rate equal to 1/12 of 0.01% of the aggregate outstanding Pool Balance (for the Student Loans owned by such Trust) as of the last day of the prior calendar month.

B.   Reimbursement by each Trust for all of the Special Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Special Servicer pursuant to this Agreement and any other expenses incurred by the Special Servicer on behalf of each Trust, including costs and expenses incurred by the Special Servicer in establishing and maintaining the FMER Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Defaulted Loans shall be paid from such collections prior to remittance to such FMER Collection Account, as described in Section 2(B)(x) and (xiii) above. The reimbursement described in this Section 5(B) with respect to Special Services for Delinquent Loans (but not

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 5 of 34   PageID #: 197
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 15 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/02/2066 1:08:15 RM
Ramsey County, MN

with respect to Early Awareness Services for Student Loans or with respect to Special Services for Defaulted Loans) shall not exceed the dollar amount listed for each Trust on Schedule B, attached hereto, in the aggregate per calendar month per respective Trust (the "Monthly Reimbursement Limit"). The reimbursement described in this Section 5(B) with respect to Special Services for Early Awareness Services for Student Loans shall not exceed the dollar amount listed for each Trust on Schedule C, attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

C.    The Administrator of each Trust may (and shall, at the direction of the Back-Up Special Servicer if it shall be acting as Special Servicer) arrange direct payments of the Servicing Fee from each Trust to the Subservicers by delivering written instructions to the Indenture Trustee to make such payments, as the same may be calculated, apportioned and charged to each of the Trusts by the Administrator based on the expenses of the Subservicers relating to the Trust's private student loan portfolio. The payment of the Servicing Fee payable by each Trust shall be solely an obligation of such Trust, payable in accordance with the Indentures, and none of the parties hereto, including the Back-Up Special Servicer in such capacity or in its capacity as successor Special Servicer, or any of the Trusts shall be liable to any Subservicer for any amounts owed by FMER pursuant to its arrangements with Subservicers except as provided in Sections 5(A) and (B) hereof to the extent funds are reimbursed by the Trusts.

Section 6.    Term of Agreement; Resignation and Removal of Special Servicer:

A.    This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust. The Back-Up Special Servicer's duties and obligations hereunder (including in its capacity as successor Special Servicer, if applicable) and its right to receive compensation as provided in Section 8(F) shall terminate upon the payment in full of the Notes under the related Indenture.

B.    Subject to Section 6(E) of this Agreement, the Special Servicer may resign its duties hereunder by providing the Trusts, the Administrator, the Back-Up Special Servicer and the Indenture Trustee with at least 10 days' prior written notice.

C.    [RESERVED]

D.    Subject to Section 6(E) of this Agreement, the Indenture Trustee shall remove the Special Servicer by delivering to the Special Servicer written notice of termination if any of the following events shall occur:

(i)    The Special Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

(ii)    A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Special Servicer under any applicable bankruptcy, insolvency or other similar law

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 6 of 34   PageID #: 198
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 16 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/00/2006 1:08:15 RM
Ramsey County, MN

now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Special Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs;

(iii)   The Special Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due; or

(iv)   Either: (a) The First Marblehead Corporation ("FMC") no longer has sufficient assets to pay debts as they come due in the ordinary course of FMC's business or (b) FMC reports in its consolidated financial statements cash, cash equivalents, investments and federal funds sold, in the aggregate, of less than $30 million at the end of any fiscal quarter.

The Special Servicer agrees that if any of the events specified in clauses (ii), (iii) or (iv) of this Section shall occur, it shall give written notice thereof to the Owner Trustee, the Back-Up Special Servicer, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of notice of termination), the Special Servicer shall (i) notify NCO (or, if applicable, such other Subservicer or Subservicers under such agreements with Subservicers as may then be in effect) of its removal (and provide the Back-Up Special Servicer with a copy of such notice), and (ii) cause the Servicers to provide to NCO (or such other Subservicer or Subservicers) such data files, information and access to Servicer's systems as may be required by the NCO Agreement (or successor agreements) or as may be necessary or desirable for NCO (or such Subservicer or Subservicers) to perform under the NCO Agreement (or such other agreements with Subservicers as may then be in effect).

E.   No resignation or removal of the Special Servicer pursuant to this Section shall be effective until a successor Special Servicer (which Servicer, if other than the Back-Up Special Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Special Servicer is bound hereunder, subject, with respect to the Back-Up Special Servicer, the terms of this Agreement. The appointment of any successor Special Servicer (other than the Back-Up Special Servicer) shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

Filed in Second Judicial District Court
2/31/2016 1:09:15 PM
Ramsey County, MN

Section 7.　.　Action upon Termination, Resignation or Removal.   Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal.   The Special Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Student Loans then in the custody of the Special Servicer pursuant to this Agreement.   In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and the Back-Up Special Servicer and take all reasonable steps requested to assist the Trusts and Back-Up Special Servicer in making an orderly transfer of the duties of the Special Servicer to the Back-Up Special Servicer or other successor Special Servicer, as applicable.

Section 8.　.　Back-Up Special Servicer.

A.   In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Back-Up Special Servicer shall become the Special Servicer and shall assume the rights, duties and obligations of the Special Servicer to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement: provided that the Back-Up Special Servicer shall not under any circumstances be responsible for any representations and warranties made by FMER as the Special Servicer, or for any payment and indemnity obligations of FMER as the Special Servicer under this Agreement, or for any liability incurred by FMER as the Special Servicer prior to the date of the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer under this Agreement or for any obligation to pay the fees and expenses of any Subservicer (except to the extent it receives funds from the Trusts for such purposes). In addition, nothing in this Agreement shall be construed to require or permit the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities including, without limitation, Early Awareness Services, with respect to consumer borrowers or other consumer obligors. Notwithstanding any term hereof or elsewhere to the contrary, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall have no liability hereunder or otherwise in the event that it is unable to engage one or more Subservicers, upon reasonably acceptable terms and conditions (including compensation) and in accordance with the applicable terms and requirements of this Agreement, to perform Early Awareness Services, enforcement, collection and servicing of Delinquent Loans and Defaulted Loans; so long as the Back-Up Special Servicer shall have taken commercially reasonable efforts to engage one or more Subservicers to perform such Special Services. Notwithstanding the foregoing, the Back-Up Special Servicer, if it is unwilling or unable to so act, may designate a successor Special Servicer under this Agreement, subject to the satisfaction of the conditions set forth in Sections 6(E) hereof.

B.   In the event that the Special Servicer resigns or is removed as Special Servicer and the Back-Up Special Servicer begins performing Special Servicer's duties as Special Servicer under this Agreement, the Back-Up Special Servicer shall be compensated as the Special Servicer in accordance with this Agreement.   Upon assuming the duties of Special Servicer pursuant to this Section 8, except as otherwise provided herein, the Back-Up Special

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

Servicer will be subject to all of the terms and conditions of this Agreement as "Special Servicer" insofar as such terms and conditions apply to the Back-Up Special Servicer's duties as set forth above. Without limiting the foregoing, in the performance or non-performance of its duties contemplated by this Section 8, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall be subject to the same standard of care as the Special Servicer and shall be entitled to the same rights, privileges, protections, immunities and benefits given to the Special Servicer hereunder. The Back-Up Special Servicer as successor Special Servicer may employ and act through agents, attorneys and independent contractors and shall not be responsible or accountable for performance of such agents and independent contractors appointed by it with due care. In carrying out the duties or obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer may enter into transactions or otherwise deal with any of its Affiliates. In no event will the Back-Up Special Servicer be responsible for the obligations of the Special Servicer (or any Servicer or Subservicer) or be responsible for any actions, omissions or malfeasance of the Special Servicer under this Agreement prior to the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer (or any Servicer or Subservicer) under this Agreement or any agreement with a Servicer or Subservicer. The Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) shall not be liable for any errors contained in any reports, certificate or other data or document delivered to the Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) hereunder or on which it must rely in order to perform its obligations hereunder (including in its capacity as Special Servicer). In no event shall the Back-Up Special Servicer have any responsibility to monitor, supervise, verify or administer the performance of the Special Servicer or any Servicer or Subservicer, prior to the date it assumes the duties of the Special Servicer. The Back-Up Special Servicer (including in its capacity as successor Special Servicer, if applicable) undertakes to perform only such duties and obligations as are specifically set forth in this Agreement, it being expressly understood by all parties hereto that there are no implied duties or obligations of the Back-Up Special Servicer hereunder. In no event will the Back-Up Special Servicer (including in its capacity as successor Special Servicer) be liable for any indirect damages, lost profits, special, punitive, or consequential damages which arise out of or in connection with the services contemplated by this Agreement even if the Back-Up Special Servicer has been informed of the possibility of such damages. If the Back-Up Special Servicer (including in its capacity as successor Special Servicer) is prevented from fulfilling its obligations hereunder as a result of government actions, regulations, fires, strikes, accidents causing a material disruption in the operations of the Back-Up Special Servicer, acts of god or other causes beyond its control, its obligations shall be suspended for a reasonable time during which such conditions exist.

    C.    In order to facilitate the performance of the Back-Up Special Servicer's duties under this Agreement, for a period of not less than 120 days following the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement the Special Servicer will provide to the Back-Up Special Servicer reasonable access, during normal business hours and upon reasonable prior notice, to all files, systems and employees of the Special Servicer then used in the provision of the Special Services. Without limiting the generality of the foregoing, the Special Servicer agrees to cooperate with the Back-Up Special Servicer (or its designee) to facilitate the orderly transfer of its duties under this Agreement, including without limitation, notifying the Servicers, Subservicers, the Custodians, their collection agents and other appropriate parties of the transfer of the Special Servicer function and providing (or causing the

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 9 of 34   PageID #: 201
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 19 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

Servicers, Subservicers and/or Custodians, as applicable, to provide) the Back-Up Special Servicer with all documents and records in electronic or other form reasonably requested by the Back-Up Special Servicer to enable the Back-Up Special Servicer or its designee to assume the Special Servicer's functions under this Agreement (including without limitation such information relating to Delinquent Loans and Defaulted Loans) and shall transfer (and cause any collection agent to transfer) to the Indenture Trustee for deposit into the Collection Account for the benefit of each Trust net collections received by it with respect to the Defaulted Loans.

D.    In the event that the Back-Up Special Servicer begins performing the Special Servicer's duties, it shall be authorized to accept and rely on all of the accounting, records (including computer records) and work of the Special Servicer, any Servicer or any Subservicer (collectively, the "Predecessor Work Product") without any audit or other examination thereof, and it shall have no duty, responsibility, obligation or liability for the acts and omissions of the Special Servicer or of a Servicer or Subservicers. If any error, inaccuracy, omission or incorrect or non-standard practice or procedure (collectively, "Errors") exist in any Predecessor Work Product and such Errors make it materially more difficult to service or should cause or materially contribute to the successor Special Servicer making or continuing any Errors (collectively, "Continued Errors"), the Back-Up Special Servicer as successor Special Servicer or otherwise shall have no duty, responsibility, obligation or liability for such Continued Errors; provided that the Back-Up Special Servicer agrees to use its commercially reasonable efforts to prevent further Continued Errors. In the event that the Back-Up Special Servicer upon succeeding to the Special Servicer becomes aware of Errors or Continued Errors, it shall use commercially reasonable efforts to reconstruct and reconcile such data in order to correct such Errors and Continued Errors and to prevent future Continued Errors. In performing the obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer in its capacity as successor Special Servicer, shall be entitled to rely conclusively on the reports and other information which it may receive from a Servicer or Subservicer, including as to the accuracy and completeness thereof, and shall not be required to reconcile such information nor shall it be required to otherwise supervise or monitor the performance of such Servicers or Subservicers. The Back-Up Special Servicer (including in its capacity as Special Servicer) shall have no liability for the acts or omissions of any such Servicer or Subservicer in performing its obligations under the applicable Servicing Agreement.

E.    Subject to the foregoing, the Back-Up Special Servicer will be required to begin performing its duties as successor Special Servicer under this Agreement within 30 days of receiving notice of the resignation or removal of FMER as Special Servicer under this Agreement (or, if later, the effective date of the resignation or removal). Administrator shall be responsible for and hereby covenants to provide such notice promptly upon such resignation or removal of FMER as Special Servicer. Out of pocket costs and expenses (including the fees of its counsel and agents) incurred by the Back-Up Special Servicer in connection with the transition of services hereunder during the 120 day period following notice of the resignation or removal of FMER as Special Servicer (including without limitation any costs and expenses associated with any Subservicer engagement described in Section 8G below) shall be borne by FMER. To the extent that such expenses are not paid by FMER (but without limiting or discharging its liability therefor), such expenses shall be paid by FMDS, as Administrator who may seek reimbursement from the Trusts (and to the extent not paid by the Administrator, such expenses shall be reimbursed to the Back-Up Special Servicer by the Trusts first, as a Servicer

Filed in Second Judicial District Court
2/17/2006 1:08:15 PM
Ramsey County, MN

expense up to the Monthly Reimbursement Limit, with any remaining amounts for a Distribution Date payable as indemnities, fees and expenses of the Servicer after the payment on such date of the principal and interest due on the Notes on such Distribution Date), such reimbursement by the Trusts to be apportioned in accordance with the respective Pool Balance of Student Loans owned by each Trust as of the resignation or removal of FMER.

F.     As compensation for the performance of the Back-Up Special Servicer's obligations under this Agreement, the Back-Up Special Servicer shall be entitled to a monthly fee of $1,000 per Trust payable by the Trusts on each Distribution Date as a Servicing Fee pursuant to the terms of each Indenture, until such time as the Back-Up Special Servicer either begins performing the duties of the Special Servicer under this Agreement or otherwise ceases to be the Back-Up Special Servicer.

G.     The initial Special Servicer hereby represents and warrants that the Default Prevention and Collection Services Agreement, dated as of March 1, 2009 (the "NCO Agreement"), between the Special Servicer and NCO Financial Systems, Inc. ("NCO") (attached hereto as Exhibit II) is in full force and effect; and the initial Special Servicer hereby covenants and agrees with the Back-Up Special Servicer that the initial Special Servicer shall at all times maintain in full force (i) the NCO Agreement, and the engagement of NCO thereunder as Subservicer, or (ii) one or more other agreements upon terms reasonably acceptable to the Back-Up Special Servicer, with a Subservicer or Subservicers reasonably acceptable to the Back-Up Special Servicer and capable of performing the obligations of a Subservicer as contemplated by this Agreement. Without limiting or discharging any other liability or obligation the Special Servicer may have hereunder or otherwise in respect thereof, the initial Special Servicer hereby expressly agrees to indemnify and hold harmless the Back-Up Special Servicer for and from any and all losses, liabilities, damages, costs and expenses (including reasonable attorney's fees) that may be suffered, incurred or paid by the Back-Up Special Servicer as a result of, or arising from, any breach on the part of the Special Servicer of the representations, warranties, covenants or agreements set forth in the preceding sentence, including without limitation any cost associated with the engagement by the Back-Up Special Servicer of one or more acceptable Subservicers necessitated thereby. FMER shall give 10 days' prior notice to the Back-Up Special Servicer of any amendment, modification or waiver relating to the NCO Agreement (or such other agreement or agreements contemplated in subclause (ii) above), which notice shall be accompanied by the form of the proposed amendment, modification, waiver or agreement or agreements, as applicable.

Section 9.     Representations and Warranties.

A.     The Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Back-Up Special Servicer:

(i)     Organization and Good Standing. The Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

{J0023935 4 }

10

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 11 of 34   PageID #: 203
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 21 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/13/2006 1:08:15 PM
Ramsey County, MN

(ii)   No Violation. Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Special Servicer. The Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Special Servicer.

(iii)   Authorization and Enforceability.   The execution and delivery by the Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Special Servicer with the terms hereof are within the powers of the Special Servicer, and have been duly authorized by all necessary action on the part of the Special Servicer. All organizational resolutions and consents necessary for the Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Special Servicer and constitutes the legal, valid and binding obligation of the Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and

62-TR-CV-16-5

Filed in Second Judicial District Court
2/13/2006 11:08:15 PM
Ramsey County, MN

valid execution, delivery, and performance of this Agreement by the Special Servicer.

    (iv)   <u>Approvals and Permits</u>.  The Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Special Servicer to perform its obligations hereunder.

    (v)   <u>No Litigation</u>.  No litigation is pending or, to the best of the Special Servicer's knowledge, threatened against it, which, if determined adversely to the Special Servicer would prohibit the Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Special Servicer.

B.    The Back-Up Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Special Servicer:

    (i)   <u>Organization and Good Standing</u>.  The Back-Up Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

    (ii)   <u>No Violation</u>.  Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Back-Up Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Back-Up Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Back-Up Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 13 of 34   PageID #: 205
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 23 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Back-Up Special Servicer. The Back-Up Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Back-Up Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Back-Up Special Servicer.

(iii)   Authorization and Enforceability.   The execution and delivery by the Back-Up Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Back-Up Special Servicer with the terms hereof are within the powers of the Back-Up Special Servicer, and have been duly authorized by all necessary action on the part of the Back-Up Special Servicer. All organizational resolutions and consents necessary for the Back-Up Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Back-Up Special Servicer and constitutes the legal, valid and binding obligation of the Back-Up Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Back-Up Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Back-Up Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Back-Up Special Servicer.

(iv)   Approvals and Permits.   The Back-Up Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Back-Up Special Servicer to perform its obligations hereunder.

62-TR-CV-16-5

Filed in Second Judicial District Court
2/13/2006 1:08:15 RM
Ramsey County, MN

(v)     No Litigation.  No litigation is pending or, to the best of the Back-Up Special Servicer's knowledge, threatened against it, which, if determined adversely to the Back-Up Special Servicer would prohibit the Back-Up Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Back-Up Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Back-Up Special Servicer.

Section 10.     Indemnification.  The Special Servicer will indemnify each of the Trusts, the Owner Trustee, the Back-Up Special Servicer (including in its capacity as Special Servicer) and the Indenture Trustee and their officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Back-Up Special Servicer or the Indenture Trustee (as applicable) and their agents, arising out of the willful misconduct, negligence or bad faith of the Special Servicer (or its agents) in the performance of the Special Servicer's duties contemplated by this Agreement; provided that neither the Special Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Administrator or the Indenture Trustee or in accordance with this Agreement and provided further however that the Back-Up Special Servicer (in its capacity as successor Special Servicer) shall only be responsible for any such loss or expense to the extent such are determined to be proximately caused by its own gross negligence or willful misconduct.  To the extent any indemnification amounts are not paid by the Special Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Student Loans then owned by each Trust.

Section 11.     Records: Inspection.  The Special Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours.  The Special Servicer hereby grants the Back-Up Special Servicer and the Indenture Trustee the right for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Special Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Special Servicer and the Indenture Trustee.  All expenses associated with the performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(B).

Section 12.     Reporting; Additional Information to be Furnished.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Back-Up Special Servicer and the Administrator on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Delinquent Loans or Defaulted Loans in a form satisfactory to the Administrator.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Administrator on behalf of the Trusts and the Back-Up Special Servicer an electronically transferred data file containing recovery data for Defaulted Loan owned by each respective Trust and other information as required by Regulation AB, each

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 15 of 34   PageID #: 207
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 25 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/5/2006 1:08:15 PM
Ramsey County, MN

for investor reporting purposes. The Special Servicer shall furnish to the Administrator on behalf of the Trusts and the Back-Up Special Servicer from time to time such additional information regarding the Student Loans, including Delinquent Loans or Defaulted Loans, as the Administrator on behalf of the Trusts or the Back-Up Special Servicer shall reasonably request.

Section 13.   Subservicing Agreements.   The Special Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Student Loan and its performance. Each subservicing agreement shall be terminable by the Special Servicer (including for the avoidance of doubt, the Back-Up Special Servicer acting as successor Special Servicer) upon thirty days written notice, and shall provide that any successor to the Special Servicer shall succeed to the Special Servicer thereunder. The Special Servicer shall promptly provide the Back-Up Special Servicer copies of all existing subservicing agreements with a Subservicer, including the NCO Agreement, and any additional subservicing agreements between the Special Servicer and Subservicers or any amendments to existing subservicing agreements with a Subservicer entered into after the date of this Agreement.

Section 14.   Regulation AB.   On or before September 15 of each calendar year beginning in 2009, the Special Servicer shall deliver to the Administrator any reports, servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Special Servicer or the Back-Up Special Servicer is required to deliver to the Administrator the documents described in this Section 14, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Special Servicer or of the Back-Up Special Servicer as successor Special Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 15.   Security Interest.   Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect of, the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 16.   Amendments.   This Agreement may be amended from time to time by the parties hereto, including amendment of Schedule A and Schedule B, attached hereto, to add additional trusts, provided that any amendment must be accompanied by the written consent of the Administrator and upon satisfying the Rating Agency Condition.

Section 17.   Independence of the Special Servicer.   For all purposes of this Agreement, the Special Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

obligations hereunder. Unless expressly authorized by the Trusts, the Special Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 18.   No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Special Servicer or Back-Up Special Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of the others.

Section 19.   Other Activities of the Special Servicer. Nothing herein shall prevent the Special Servicer or Back-Up Special Servicer or their Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 20.   Notices. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Special Servicer, to:

> The First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

If to the Back-Up Special Servicer, to:

> U.S. Bank National Association
> Corporate Trust – Structured Finance
> One Federal Street, Third Floor
> Boston, Massachusetts 02110
> Attention: David Duclos
> Phone: 617-603-6409
> Fax: 617-603-6638

> U.S. Bank National Association
> c/o U.S. Bank Portfolio Services
> 1310 Madrid, Suite 103
> Marshall, Minnesota 56258
> Attention: Joe Andries
> Phone: 507-532-7129
> Fax:    866-806-0755

{F0623935-4 }

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 17 of 34   PageID #: 209
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 27 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/08/2016 1:08:15 PM
Ramsey County, MN

If to the Trusts or the Indenture Trustee, to:

The address set forth in the applicable Indenture

With a copy to:

First Marblehead Data Services, Inc.
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Ms. Rosalyn Bonaventure

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 21.   Notice to Noteholders.  Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Special Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed FMER as Special Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 22.   Miscellaneous.

A.   Successors and Assigns.  This Agreement may not be assigned by the Special Servicer unless such assignment is previously consented to in writing by the Indenture Trustee, and the Back-Up Special Servicer and unless each Rating Agency, after having been given 10 days' prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee hereunder in the same manner as the Special Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Special Servicer, without the consent of the Indenture Trustee or the Back-Up Special Servicer either (i) to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Special Servicer or (ii) to Union Federal Savings Bank or any of its subsidiaries; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Special Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B.   Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

H9023935.4.1

Filed in Second Judicial District Court
2/16/2016 1:08:15 RM
Ramsey County, MN

C.    Headings.  The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or effect of this Agreement.

D.    Counterparts. . This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E.    Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F.    Limitation of Liability of Owner Trustee.  Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts.  For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G.    Third Party Beneficiary.  The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H.    No Petition.  The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Transaction Document as defined in the Indenture.

I.    Grant.  Each Trust hereby acknowledges that the Servicing Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture. Each Trust hereby Grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Holders of Notes and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing.  The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral.  By its signature below, the

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 19 of 34   PageID #: 211
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 29 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/03/2016 1:08:15 PM
Ramsey County, MN

Indenture Trustee on behalf of the holders of Notes and other secured parties as applicable, acknowledges such Grant.

[SIGNATURE PAGE FOLLOWS]

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____
    Name:
    Title: TREASURER

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:
    Title:

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____
    Name:
    Title:    Rosalyn Bonaventure
                   President
           First Marblehead Data Services

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____
    Name:
    Title:

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:   Joseph Andries
    Title:   Senior Vice President

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____
    Name:
    Title:

[F0023935.2 ]

62-TR-CV-16-5

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____

Name:

Title: Treasurer


U.S. Bank National Association, as the Back-Up Special Servicer

By: _____

Name:

Title:


Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____

Name:  .  Dorri Costello

Title:  Financial Services Officer


ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____

Name:

Title:           Rosalyn Bonaventure
                    President
          First Marblehead Data Services


[0021933.2;10129599]IV-6

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 23 of 34   PageID #: 215
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 33 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

ACKNOWLEDGED:

U. S. Bank National Association, as Indenture
Trustee for each of the Indentures listed on
Schedule A attached hereto

By: _____

Name:

Title:

David Duclos
Vice President

{F0029352.}

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

### SCHEDULE A

**Trusts:**

- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2;
- The National Collegiate Student Loan Trust 2005-3;
- The National Collegiate Student Loan Trust 2006-1;
- The National Collegiate Student Loan Trust 2006-2;
- The National Collegiate Student Loan Trust 2006-3;
- The National Collegiate Student Loan Trust 2006-4;
- The National Collegiate Student Loan Trust 2007-1; and
- The National Collegiate Student Loan Trust 2007-2.

**Indentures:**

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005;
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005;
- The National Collegiate Student Loan Trust 2006-1, dated as of March 1, 2006;
- The National Collegiate Student Loan Trust 2006-2, dated as of June 1, 2006;
- The National Collegiate Student Loan Trust 2006-3, dated as of September 1, 2006;
- The National Collegiate Student Loan Trust 2006-4, dated as of December 1, 2006;
- The National Collegiate Student Loan Trust 2007-1, dated as of March 1, 2007; and
- The National Collegiate Student Loan Trust 2007-2, dated as of June 1, 2007.

{PR0023935.4 }

A-1

62-TR-CV-16-5

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

## SCHEDULE B

[Schedule of Reimbursement Limits per Trust by Calendar Month]

B-1

Filed in Second Judicial District Court
2/25/2016 1:18:15 PM
Ramsey County, MN

Schedule B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 62,000.00 | 57,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 62,000.00 |
| 03/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 62,000.00 | 57,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 62,000.00 |
| 04/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 05/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 06/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 26,000.00 | 77,000.00 | 52,000.00 | 37,000.00 | 88,000.00 | 57,000.00 | 53,000.00 | 58,000.00 |
| 07/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 46,000.00 | 53,000.00 | 58,000.00 |
| 08/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 48,000.00 | 53,000.00 | 58,000.00 |
| 09/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 27,000.00 | 21,000.00 | 64,000.00 | 37,000.00 | 27,000.00 | 60,000.00 | 48,000.00 | 53,000.00 | 48,000.00 |
| 10/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 11/2009 | 16,000.00 | 10,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 12/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 16,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 01/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 49,000.00 |
| 02/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 49,000.00 |
| 03/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 48,000.00 |
| 04/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 05/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 64,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 06/2010 | 11,000.00 | 11,000.00 | 39,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 64,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 07/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 49,000.00 |
| 08/2010 | 11,000.00 | 11,000.00 | 39,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 09/2010 | 11,000.00 | 11,000.00 | 39,000.00 | 22,000.00 | 16,000.00 | 44,000.00 | 32,000.00 | 22,000.00 | 60,000.00 | 39,000.00 | 38,000.00 | 44,000.00 |
| 10/2010 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 23,000.00 | 56,000.00 | 39,000.00 | 39,000.00 | 44,000.00 |
| 11/2010 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 56,000.00 | 39,000.00 | 39,000.00 | 44,000.00 |
| 12/2010 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 45,000.00 | 28,000.00 | 22,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 01/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 17,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 02/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 03/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 22,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 04/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 05/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 18,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 06/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 22,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 35,000.00 | 34,000.00 |
| 07/2011 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 08/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 09/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 17,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 10/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 11/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 28,000.00 | 28,000.00 | 23,000.00 | 58,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 12/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 34,000.00 | 34,000.00 | 34,000.00 |
| 01/2012 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 34,000.00 |
| 02/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 55,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 03/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 58,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 04/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 34,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 05/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 55,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 06/2012 | 6,000.00 | 5,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 35,000.00 | 23,000.00 | 23,000.00 | 55,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 07/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 08/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 7,000.00 | 12,000.00 | 23,000.00 | 23,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 09/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 7,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 17,000.00 | 53,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 10/2012 | 6,000.00 | 5,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

Monthly Reimbursement Limit for payments relating to Delinquent Loans

Schedule B

| Date | 2003-1 | 2003-2 | 2005-1 | 2005-2 | 2005-3 | 2005-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2012 | 8,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 12/2012 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 01/2013 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 02/2013 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 03/2013 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 04/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 05/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 06/2013 | 8,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 07/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 08/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 09/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 10/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| 11/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| 12/2013 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 01/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 02/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 03/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 04/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 05/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 06/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 30,000.00 | 16,000.00 | 18,000.00 | 24,000.00 |
| 07/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 08/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 09/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 10/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 11/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 12/2014 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 01/2015 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 02/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 03/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 04/2015 | | 8,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 05/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 10,000.00 |
| 06/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 10,000.00 |
| 07/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 10,000.00 |
| 08/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 09/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 10/2015 | | 6,500.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 11/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 12/2015 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 01/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 02/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 03/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 04/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 05/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 06/2016 | | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 07/2016 | | 7,000.00 | 7,000.00 | | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

**Schedule B**

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/2016 | | | 7,000.00 | 7,000.00 | | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 09/2016 | | | 7,000.00 | 7,000.00 | | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 10/2016 | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 11/2016 | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 12/2016 | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 01/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2017 | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2017 | | | | | | 7,000.00 | 7,000.00 | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 11/2017 | | | | | | 7,000.00 | 7,000.00 | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 12/2017 | | | | | | 7,000.00 | 7,000.00 | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 01/2018 | | | | | | 7,000.00 | 7,000.00 | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2018 | | | | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2018 | | | | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2018 | | | | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2018 | | | | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2018 | | | | | | 7,000.00 | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2018 | | | | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2018 | | | | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2018 | | | | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2018 | | | | | | | | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 11/2018 | | | | | | | | | 7,000.00 | | 7,000.00 | 7,000.00 |
| 12/2018 | | | | | | | | | 7,000.00 | | 7,000.00 | 7,000.00 |
| 01/2019 | | | | | | | | | 7,000.00 | | 7,000.00 | 7,000.00 |
| 02/2019 | | | | | | | | | 7,000.00 | | | 7,000.00 |
| 03/2019 | | | | | | | | | 7,000.00 | | | 7,000.00 |
| 04/2019 | | | | | | | | | 7,000.00 | | | |
| 05/2019 | | | | | | | | | 7,000.00 | | | |
| 06/2019 | | | | | | | | | | | | |
| 07/2019 | | | | | | | | | | | | |
| 08/2019 | | | | | | | | | | | | |
| 09/2019 | | | | | | | | | | | | |
| 10/2019 | | | | | | | | | | | | |
| 11/2019 | | | | | | | | | | | | |
| 12/2019 | | | | | | | | | | | | |
| 01/2020 | | | | | | | | | | | | |
| 02/2020 | | | | | | | | | | | | |
| 03/2020 | | | | | | | | | | | | |
| 04/2020 | | | | | | | | | | | | |

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 29 of 34   PageID #: 221
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 39 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/13/2016 1:08:15 PM
Ramsey County, MN

SCHEDULE C

[Schedule of Early Awareness Reimbursement Limits per Trust]

{K0029033.4}

Filed in Second Judicial District Court
2/26/2016 1:08:15 PM
Ramsey County, MN

Schedule C

Lifetime Expense Limit for payments relating to Early Awareness Program

| 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $17,000.00 | $34,000.00 | $149,000.00 | $123,000.00 | $105,000.00 | $345,000.00 | $257,000.00 | $180,000.00 | $327,000.00 | $395,000.00 | $416,000.00 | $460,000.00 |

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 31 of 34   PageID #: 223
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 41 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/ 016 1:08:15 PM
Ramsey County, MN

## EXHIBIT I

All TERI claim packages require the following documentation:

* Application, Credit Agreement, and Disclosure Statement

* Evidence of preparation for repayment summary letter and telephone attempts

* Forbearance Form(s) and supporting documentation where required and/or system generated history reflecting the forbearance period

* Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

* Payment History, Correspondence History

* Assignment of Rights (should include disbursement date and name of the current Owner)

* Bankruptcy and/or death information as appropriate (see Death Claim section)


For Non-TERI Originated Loans the claim package must also include the following documentation:

* Credit Bureau Report (for non-TERI originated loans only)

* School Certification signed by school official or Enrollment Verification for Direct-to-Consumer and Continuing Education loans (for non-TERI originated loans only)

* Income/Employment Documentation, including but not limited to, where applicable, full recourse letter, income verification letter, and revolving debt burden calculation (for non-TERI originated loans only)

* Immigration documentation required to be collected at origination (f/k/a U.S. Citizenship and Immigration Service (USCIS)) documentation of proof of permanent U.S. residency (if applicable) (for non-TERI originated loans only):

Exhibit I-1

[50023035-4]

Filed in Second Judicial District Court
2/03/2006 1:08:15 PM
Ramsey County, MN

Cosigners:

\*        INS 151 or INS 551 form with a valid expiration;

\*        A departure record (I-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

\*   .     Foreign passport bearing an unexpired temporary I-551 stamp.

Students:

\*        Copy of his or her student visa, permanent resident card, F-1 or I -20 form.

\*        A departure record (I-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

\*        INS 151 or INS 551 form with a valid expiration;

For a Rehab Loan, the required claim documentation includes:

\*    Application, Credit Agreement

\*    Repurchase Disclosure Statement

\*    Assignment of Rights (should include disbursement date and name of the current Owner)

\*    Payment History, Correspondence History

\*    Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

\*    Bankruptcy and/or death information as appropriate (see Death Claim section)

In the event of a rolling delinquency, the Servicer will submit the history for the most recent 210 days or the delinquency period prior to claim, whichever is less. This may not include all delinquency servicing activities for the loan (e.g., activities performed in the early states of delinquency due to the fact the Borrower rolled several times during the delinquency period).

{P0023935.4 }

Case 1:16-cv-00229-JDL   Document 30-2   Filed 08/18/16   Page 33 of 34   PageID #: 225
CASE 0:16-cv-00778-PAM-SER   Document 1-4   Filed 03/25/16   Page 43 of 203
62-TR-CV-16-5

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

TERI will accept microfilm or electronic copies of all original documents with the claim package. In the event that the Servicer is unable to secure the original wet signature Credit agreement, TERI will accept a copy of such Note if it is accompanied by a notarized affidavit certifying that the original is not available and that the copy is a true one.

Further, the complete copy of the Note must contain the signatures of all obligors of the note. If a court of competent jurisdiction refuses to accept the submitted copy of a note in the event that TERI must litigate a case, and TERI loses the case for that reason, TERI will be reimbursed by the Loan Owner for the amount that TERI paid to the Owner via the Servicer on the claim.

TERI, the Owner, and the Servicer acknowledge there may be contractual agreements between Owner and Servicer governing the entity responsible for reimbursing TERI the amount of the claim if a court of competent jurisdiction refuses to accept such a copy of a Note.

TERI will make its best effort to send claim payments to the Servicer 90-120 days after the claim has been submitted. Claim payments shall include accrued interest through the payoff date.

{H0023053-4}

62-TR-CV-16-5

Filed in Second Judicial District Court
2/02/2016 1:08:15 AM
Ramsey County, MN

EXHIBIT II

[NCO Agreement]

Exhibit II-1

{P0023935.1 }

# APPENDIX F



THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT MAY BE OF INTEREST TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.

Dated: February 24, 2016

## NOTICE OF TRUST INSTRUCTION COURT HEARING

**To the Holders of the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3 (the "Trusts") and the Additional Addressees Identified on Schedule A Hereto**

### CUSIPS[1]

63543PAG1 63543PAJ5 63543PAK2 63543PAM8 63543PAN6
63543PAP1 63543PAQ9 63543PAR7 63543PAS5 63543PAT3
63543PAX4 63543PAY2 63543PBC9 63543PAZ9 63543PBA3
63543PBB1 63543PBG0 63543PBM7 63543PBN5 63543PBP0
63543PBK1 63543PBL9 63543PBT2 63543PBU9 63543PBY1
63543PBV7 63543PBW5 63543PBX3 63543TAD0 63543TAE8
63543TAF5 63543TAG3 63543TAH1 63543TAJ7 63543TAK4

This notice is given to you by U.S. Bank National Association, not in its individual capacity, but solely in its capacity as indenture trustee (the "Indenture Trustee") under certain Indentures related to the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3 (the "Indentures").[2] Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Indentures.

**The purpose of this notice is to inform you that on February 18, 2016, the Indenture Trustee filed a trust instruction petition (the "Petition") in the District Court of Ramsey County, Minnesota (the "Court") (Case No. 62-TR-CV-16-5). In the Petition, the Indenture Trustee has requested instructions from the Court concerning the validity of Odyssey Education Resources LLC's ("Odyssey") purported**

---

[1] Any CUSIP numbers appearing in this Notice or in its exhibits, schedules or attachments have been included solely for convenience. The Indenture Trustee assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

[2] The "Indentures" are those (i) dated December 1, 2003 by and between the National Collegiate Student Loan Trust 2003-1 and U.S. Bank National Association, as Indenture Trustee; (ii) dated June 1, 2004 by and between the National Collegiate Student Loan Trust 2004-1 and U.S. Bank National Association, as Indenture Trustee; (iii) dated October 1, 2004 by and between the National Collegiate Student Loan Trust 2004-2 and U.S. Bank National Association, as Indenture Trustee; (iv) dated February 1, 2005 by and between the National Collegiate Student Loan Trust 2005-1 and U.S. Bank National Association, as Indenture Trustee; (v) dated June 1, 2005 by and between the National Collegiate Student Loan Trust 2005-2 and U.S. Bank National Association, as Indenture Trustee; and (vi) dated October 1, 2005 by and between the National Collegiate Student Loan Trust 2005-3 and U.S. Bank National Association, as Indenture Trustee.



appointment as Servicer for the Trusts under the Indentures and the Trusts' other governing agreements. If the Court determines that Odyssey was validly appointed as Servicer for the Trusts, the Petition also seeks instruction regarding the payment of certain invoiced expenses to Odyssey, resolution of certain inconsistencies between the Odyssey Servicing Agreement and the Trusts' existing Servicing Agreements and other related issues. A copy of the Petition (without exhibits) is attached as **Appendix I** hereto. The Petition sets forth a detailed description of the relief sought by the Indenture Trustee, and the Noteholders should review it carefully. Noteholders can access information related to the Petition by entering the case number listed above into the appropriate field in the Court's website.[3] On February 22, 2016 the Court entered an Order for Hearing (the "Order for Hearing"), attached as **Appendix II** hereto, scheduling a hearing on the Petition for 1:45 p.m. (central time) on April 18, 2016, at the following address:

**Courtroom 650**
**Ramsey County District Courthouse**
**15 West Kellogg Blvd.**
**St. Paul, Minnesota 55102**

Noteholders are hereby referred to the Petition and the Court's Order for Hearing for additional information concerning the factual background that gave rise to the Petition, as well as the instructions sought therein. In accordance with the Order for Hearing, parties in interest may object to the Petition, or any of the relief being sought therein, by filing and serving a memorandum of law setting forth their respective positions not later than five business days before the hearing. **THE OUTCOME OF THE HEARING ON THE PETITION MAY AFFECT YOUR LEGAL RIGHTS AND YOUR POTENTIAL RECOVERY ON THE NOTES. THE INDENTURE TRUSTEE URGES THE NOTEHOLDERS TO REVIEW THE PETITION CAREFULLY.**

The Indenture Trustee has filed the Petition seeking instructions with respect to Odyssey's purported appointment as Servicer because these determinations are important to the administration of the Trusts, including how the Trusts' delinquent loans are serviced in the future. Additionally, the Petition is important because the Administrator has expressed reservations about Odyssey's entitlement to certain invoiced expenses from January 2015-January 2016 (the "Disputed Funds"), and the Disputed Funds have been held back from distribution to the Noteholders until the Court resolves these issues. Further, the Petition is necessary because the Indenture Trustee has not been directed by Noteholders in accordance with the Indentures to take any specific action with respect to the underlying dispute. The Indenture Trustee has reserved all rights with respect to the Disputed Funds and any direction that it may receive in accordance with the Indentures.

Noteholders wishing to contact the Indenture Trustee to share their views about the matters described in this notice or to provide directions to the Indenture Trustee in accordance with the Indentures should direct their communications in writing to:

---

[3] http://pa.courts.state.mn.us/Search.aspx?ID=200



**David Duclos**
**U.S Bank National Association**
**One Federal Street, 3rd Floor**
**Boston, MA 02110**
**Email: david.duclos@usbank.com**

In addressing communications that may be directed to it, the Indenture Trustee may conclude that a specific response to particular communications from individual Noteholders is not consistent with equal and full dissemination of information to all Noteholders.

Please be further advised that the Indenture Trustee reserves all of the rights, powers, claims, and remedies available to it under the Indentures and applicable law. No delay or forbearance by the Indenture Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Indentures, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or acquiescence therein. The Indenture Trustee expressly reserves all rights in respect of the Indentures including, without limitation, its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by it in performing its duties, indemnities owing or to become owing to it, compensation for its time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with the Indentures at the request or direction of any Noteholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

This notice references the Indentures, the Petition and the Order for Hearing, and it is not a complete summary or statement of the material terms thereof, of relevant law or of relevant legal procedures. Noteholders and other persons interested in the Trusts should not rely on the Indenture Trustee or advisors retained by the Indenture Trustee as their sole source of information.

Please note that this notice is not intended and should not be construed as investment, accounting, financial, legal, tax or other advice by or on behalf of the Indenture Trustee, or its directors, officers, affiliates, agents, attorneys or employees. In respect of all matters set forth herein, each person or entity receiving this notice should seek advice from its own legal counsel and financial advisors based on its particular circumstances.

**U.S. BANK NATIONAL ASSOCIATION,**
*acting solely in its capacity as Indenture Trustee*


**Schedule A**

**Additional Addressees**

BY FIRST CLASS OR CERTIFIED MAIL

Owner Trustee
Wilmington Trust Company
Attn: Corporate Trust Administration
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001

Administrator
GSS Data Services, Inc.
401 West A Street, Suite 1300
San Diego, CA 92101

Servicer
Pennsylvania Higher Education Assistance Agency
Attn.: Senior Vice President, Marketing & Client Affairs
1200 North Seventh Street
Harrisburg, Pennsylvania 17102

Special Sub-Servicer
Turnstile Capital Management, LLC
Attn: Alan Amico
401 W. A Street, Suite 1300
San Diego, CA 92101

Sub-Servicer
NCO Financial Systems, Inc.
Attn: Joshua Gindin, Esq.
Executive Vice President and General Counsel
507 Prudential Road
Horsham, Pennsylvania 19044

Special Servicer
U.S. Bank National Association
Attn: Brian Tri
60 Livingston Ave.
St. Paul, Minnesota 55107



usbank.com

Odyssey
Odyssey Education Resources LLC
Attn: Tom Glanfield
800 Corporate Drive
Ft. Lauderdale, FL 33334

Rating Agencies
Moody's Investors Service, Inc.
ABS Monitoring Department
99 Church Street
New York, New York 10007

Standard & Poor's Ratings Services
Attn: ABS Surveillance Group
55 Water Street
41st floor
New York, NY 10041-0003

Fitch Ratings
Attn: ABS Surveillance Group
One State Street Plaza
New York, NY 10004

With a copy to:

VCG Securities LLC
407 SE 1st Street
Delray Beach, FL 33483

Cook and Sadorf, PL
1744 N. Belcher Rd., Suite 150
Clearwater, FL 33765
Attn: Rick Sadorf

Lance Gotthoffer
Chaitman LLP
465 Park Avenue
New York, NY 10022

Neil L. Arney
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, CO 80202-2626



usbank.com

**Appendix I**

**Petition**

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

STATE OF MINNESOTA         DISTRICT COURT

COUNTY OF RAMSEY         SECOND JUDICIAL DISTRICT

In the Matter of the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3.

Case Type: Other

File No. **62-TR-CV-16-5**

---

### PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUSTS PURSUANT TO MINN. STAT. § 501C.0201

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

1. Petitioner U.S. Bank National Association ("U.S. Bank") files this petition (the "Petition") solely in its capacity as indenture trustee (the "Indenture Trustee") acting for the benefit of the holders of notes issued through certain securitization trusts (the "Indenture Trusts") in connection with the following Delaware Statutory Trusts: National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2005-3 (the "Issuers").

2. The Indenture Trustee seeks the Court's instruction regarding VCG Securities LLC's ("VCG") attempt to appoint Odyssey Education Resources LLC ("Odyssey") as a servicer or special servicer for each Issuer under a December 30, 2014 servicing agreement (the "Odyssey Agreement").[1] VCG holds all, or the majority, of the beneficial interest in each Issuer and is attempting to act through the owner trustee to (1) appoint Odyssey as servicer or special servicer and (2) direct

---

[1] A true and correct copy of the Odyssey Agreement is attached as Exhibit 1.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

approximately $1.46 million in indenture trust funds to Odyssey.

3.      The Indenture Trustee's rights and responsibilities are contained in an indenture entered into with each Issuer (the "Indentures"). Under the Indentures, the Indenture Trustee maintains certain trust accounts that hold funds for payments to Noteholders and other parties including servicers. In this case, the Indenture Trustee has been instructed to release trust funds to pay numerous invoices from Odyssey, but is concerned that payment of such funds may violate the terms of the Indentures and harm the Noteholders.

4.      Among the Indenture Trustee's concerns is the fact that Odyssey does not appear to have actually performed any services to benefit the Noteholders. Additionally, Odyssey's appointment appears to alter the current servicing arrangements in a way that requires, at the very least, Rating Agency Confirmation and Noteholder consent. Lastly, the Odyssey Agreement grants Odyssey the power to purchase trust assets at below-market value, which creates a potential for self-dealing.

5.      The Indenture Trustee seeks the Court's instruction on three issues. First, the Indenture Trustee seeks instruction regarding whether, under the Governing Agreements,[2] Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding, such that the Indenture Trustee should release funds necessary to compensate Odyssey for any future services performed.

6.      Second, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding how to resolve certain conflicts between the Odyssey Agreement and the Governing Agreements.

---

[2] The "Governing Agreements" include, for each Issuer respectively, the Trust Agreement, Indenture, the Servicing Agreement, the Administration Agreement and the Special Servicing Agreement.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

7.      Third, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding whether to release the funds necessary to pay Odyssey's outstanding invoices, although Odyssey has not provided the Administrator or Indenture Trustee any evidence that it has performed any services for the Issuers, and the Indenture Trustee has not received any funds for forwarding to Noteholders generated by Odyssey's alleged servicing activities.

## Jurisdiction and Venue

8.      The Indenture Trustee is a national banking association and has its principal corporate trust office in St. Paul, Minnesota. This Court has jurisdiction *in rem* over this Petition under Minn. Stat. § 501C.0201 because the Indenture Trusts' assets are administered by and through the Indenture Trustee's St. Paul corporate trust office.

9.      This petition is properly venued in this Court pursuant to Minn. Stat. § 501C.0207(2)(ii).

## Issuance of Student Loan-Backed Notes

10.      Each Issuer is a Delaware Statutory Trust for which Wilmington Trust Company acts as the current trustee (the "Owner Trustee").

11.      The Issuers were created to facilitate the issuance and sale of notes (the "Notes") backed by private student loans (the "Loans") to investors (the "Noteholders"). To facilitate this process, each Issuer pledged its interest in the Loans to the Indenture Trustee under an Indenture.[3] The Notes entitle the Noteholders to a portion of the cash flows generated by repayment of the Loans.

12.      Each Issuer also retained an interest in any residual cashflow generated

---

[3] A true and correct copy of the Indenture relating to National Collegiate Student Loan Trust 2005-3 is attached as Exhibit 2. The terms of the 2005-3 Indenture relevant to this Petition are substantially similar to those of the other Indentures.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

by the Loans after the Notes are paid in full.

**Additional Relevant Parties**

13.     In addition to the Owner Trustee, the operations of each Issuer and Indenture Trust are carried out by numerous parties including the Indenture Trustee, Servicers, a Special Servicer, and an Administrator.

14.     U.S. Bank is the Indenture Trustee of, and is responsible for administering, each Indenture Trust. This includes holding deposits received from the Servicers or Special Servicer, making distributions to Noteholders in accordance with reports received from the Administrator, and making reports or other information received from various parties available to Noteholders.

15.     The Pennsylvania Higher Education Assistance Agency ("PHEAA") acts as the primary Servicer for each Issuer. Each Servicer collects principal and interest payments on the Loans from the borrowers and remits those payments to the Indenture Trustee for distribution to Noteholders.

16.     First Marblehead Education Resources, Inc. ("First Marblehead") was the original Special Servicer and U.S. Bank was the back-up Special Servicer for each Issuer under the Special Servicing Agreement dated March 1, 2009 (the "Special Servicing Agreement").[4] When First Marblehead later resigned, U.S. Bank succeeded First Marblehead as Special Servicer. Under the Special Servicing Agreement, the Special Servicer provides certain services for Loans that are more than 30 days delinquent. U.S. Bank later contracted with Transworld Systems Inc. ("TSI") to act as Sub-Servicer and with Turnstile Capital Management, LLC ("TCM") to act as Special Sub-Servicer for each Issuer.

17.     GSS Data Services Inc. ("GSSDS") acts as the Administrator for each Issuer (the "Administrator") under an Administration Agreement (collectively, the "Administration Agreements").[5] The Administrator performs certain duties under

---

[4] A true and correct copy of the Special Servicing Agreement is attached as Exhibit 3.
[5] A true and correct copy of the Administration Agreement relating to National Collegiate Student Loan

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

the Governing Agreements including directing payment of expenses of the Issuers and creating monthly reports to Noteholders.

18.     VCG holds all, or the majority, of the beneficial interest in each Issuer. As the Issuers' owner, VCG has instructed the Owner Trustee to take certain actions with respect to Odyssey and the Odyssey Agreement. Upon information and belief, VCG owns, controls, or is otherwise affiliated with Odyssey.

**The Odyssey Agreement**

19.     On December 30, 2014, VCG directed the Owner Trustee to enter into the Odyssey Agreement, which purports to appoint Odyssey as a "Servicer" for each Issuer. Before this, neither the Administrator nor the Indenture Trustee was involved in or aware of the negotiation or execution of the Odyssey Agreement.

20.     While the Odyssey Agreement purports to appoint Odyssey as a "Servicer," the Odyssey Agreement allows Odyssey to perform certain collection and enforcement services with respect to Loans that are more than 30 days delinquent. The Special Servicing Agreement also provides for U.S. Bank as the Special Servicer to perform similar services with respect to Loans that are more than 30 days delinquent. As a result, it is unclear whether the Odyssey Agreement appoints Odyssey as a Servicer or replacement Special Servicer. This distinction is significant because the procedures for appointing a Servicer differ from those for appointing a replacement Special Servicer.

21.     A Servicer cannot be properly appointed unless 10 days' prior notice of the appointment is provided to the Rating Agencies and, during the 10 days, none of the Rating Agencies notify the Administrator or the Indenture Trustee in writing that the appointment will result in a reduction or withdrawal of the Notes' current rating.[6]

_____

Trust 2005-3 is attached as Exhibit 4. The terms of the 2005-3 Administration Agreement relevant to this Petition are substantially similar to those of the other Administration Agreements.

[6] *See, e.g.,* Ex. 2 at A-20, A-23 (defining "Rating Agency Condition" and "Servicer"). Additionally, to the extent the Odyssey Agreement would increase the amount of servicing fees being paid, the Indentures require that the Rating Agencies be given 10 days' prior notice and, during the 10 days, none of the

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

22.     A replacement Special Servicer cannot be properly appointed without written confirmation from each Rating Agency (other than Fitch, Inc.) that the appointment will not result in a reduction or withdrawal of the Notes' current rating.[7] Here, to the extent Odyssey is able to service Loans pursuant to the Odyssey Agreement, it will effectively replace U.S. Bank as Special Servicer as to such Loans.[8]

23.     On February 4, 2015, the Administrator received a letter from VCG requesting that the Administrator acknowledge the Odyssey Agreement.[9] This letter stated that "the Rating Agency Condition has been satisfied." This letter, however, did not attach or describe the purported notice and did not attach or describe any confirmation from the Rating Agencies that the appointment would not result in a rating reduction or withdrawal. Neither the Administrator nor the Indenture Trustee was involved in or aware of the purported satisfaction of the Rating Agency Conditions with respect to the Odyssey Agreement. Thus, it is unclear if the Rating Agency Conditions for appointment of Odyssey as a Servicer have been satisfied, much less the more stringent conditions for replacement of a Special Servicer.

24.     The Odyssey Agreement also materially alters how Loans may be released from the Indentures. The Odyssey Agreement permits Odyssey to purchase defaulted Loans at below-market prices, which is not allowed by any of the other servicing agreements.

25.     Another potential defect in Odyssey's appointment as Servicer is that Odyssey never obtained Noteholder consent of the appointment. To the extent that Odyssey's appointment would waive, amend, modify, supplement, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder

---

Rating Agencies notify the Administrator or the Indenture Trustee in writing that such action will result in a reduction or withdrawal of the Notes' current rating. *See id.* at A-23 (defining "Servicing Fees").

[7] *See, e.g.,* Ex. 3 at § 6(E).

[8] Additionally, a failure by the Issuers to send Loans that are more than 30 days delinquent to U.S. Bank as Special Servicer would violate the Special Servicing Agreement.

[9] A true and correct copy of this letter is attached as Exhibit 5.

consent.[10] Here, because all Loans are currently being serviced by the current Servicer and Special Servicer, it is unclear what Loans would be available for Odyssey to service. To the extent Odyssey's servicing would amend, modify, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder consent.

26.     On February 10, 2015, the Administrator responded to VCG's letter by informing VCG that Odyssey was not an approved servicer because various preconditions to its appointment had not been fulfilled.

27.     On March 23, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator stating that it was forbidden from having any communication regarding Odyssey with PHEAA or any Rating Agency. The letter also stated that the Administrator should not take any action that would cause or allow any defaulted Loan to be transferred to the Special Servicer, and that it should not hire any entity to service defaulted Loans.

28.     On October 1, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator instructing it to "cease and desist" with giving PHEAA any direction with respect to the servicing of defaulted Loans.

### The Odyssey Invoices

29.     On December 8, 2015 the Issuers'/VCG's counsel, Mr. Lance Gotthoffer, emailed the Administrator invoices that sought "Reimbursement of Expenses" purportedly incurred by Odyssey for each Issuer during each month of 2015.[11]

30.     On December 10, 2015, the Administrator responded to Mr. Gotthoffer's email by requesting a detailed description of the expenses for which Odyssey was seeking reimbursement.[12]

---

[10] *See, e.g.*, Ex. 2 at § 3.07(c) ("Issuer shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders"); *see also id*. at A-4 (defining "Basic Documents" to include "Servicing Agreements").
[11] True and correct copies of this email and all of the 2015 invoices are attached hereto as Exhibit 6.
[12] A true and correct copy of this email is attached as Exhibit 7.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

31.     Mr. Gotthoffer responded on December 11, 2015 that further detail was not required under the Odyssey Agreement, and that none would be provided unless the Administrator could direct him "to a provision in [the Odyssey Agreement] requiring Odyssey to provide the detailed explanation of expenses requested in [the Administrator's] email[.]"[13]

32.     The Administrator's outside counsel, Kutak Rock LLP, wrote Mr. Gotthoffer on December 16, 2015, stating that Odyssey had not been validly appointed as Servicer and, therefore, Odyssey's invoices would not be paid.

33.     In addition to Odyssey's 2015 invoices, Odyssey has subsequently sent the Administrator invoices for January and February of 2016.[14] The Odyssey invoices received to date total $1.46 million.[15]

34.     No documentation or backup for the expenses allegedly incurred by Odyssey has been provided to the Administrator as of the date this Petition was filed.

35.     As of the filing of this Petition, the Indenture Trustee has not received any proceeds from Odyssey's purported servicing of the Loans. If Odyssey serviced any Loans during 2015 or later, it should have remitted monies collected to the Indenture Trustee for disbursement to the Noteholders.

## Threatened Litigation

36.     On December 23, 2015, Mr. Gotthoffer sent a draft complaint to Kutak Rock LLP, counsel to the Administrator, naming the Administrator and the Indenture Trustee as defendants. Mr. Gotthoffer stated that the complaint would be filed unless the Odyssey invoices were paid by December 28, 2015.

37.     The draft complaint sought to compel the Indenture Trustee and

---

[13] *See id.*

[14] A true and correct copy of the January 2016 invoices are attached hereto as Exhibit 8. The February 2016 invoices were received too late to be included in the Monthly Issuer Order for the February distribution date.

[15] The invoices attached as Exhibits 6 and 8 total $1.35 million through January, 2016. With the addition of the February, 2016 invoices, Odyssey's outstanding invoices to date total $1.46 million.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

Administrator to pay Odyssey's outstanding invoices. The draft complaint also asserted a claim against the Administrator seeking indemnification under the Administration Agreement. Lastly, the draft complaint asserted a tortious interference claim against the Indenture Trustee for "tortiously interfer[ing] with, and caus[ing] [the Administrator] to breach, the Administration Agreement."

### Orders to Pay Odyssey Invoices

38.     On January 14, 2016, VCG sent an "Officers Certificate" to the Indenture Trustee attesting that the all conditions precedent for the execution of the Odyssey Agreement had been satisfied and requesting that the Indenture Trustee acknowledge the Odyssey Agreement.[16]

39.     Also on January 14, 2016, Mr. Gothoffer's law firm, Chaitman LLP, sent an "Opinion of Counsel" to the Indenture Trustee in which Chaitman LLP opined that "the execution of the Odyssey Agreement is authorized and/or permitted by the applicable Indentures and that all conditions precedent to such execution have been complied with."[17]

40.     On January 20, 2016, the Owner Trustee, at the direction of the Issuers/VCG, sent an "Issuer Order" to the Administrator that instructed the Administrator to (1) acknowledge the Odyssey Agreement, (2) cause the payment of the Odyssey invoices that had been submitted, (3) cause the payment of all future Odyssey invoices, and (4) prepare and execute all additional documents and take all action necessary to cause the payment of all current and future Odyssey invoices.[18] Under Section 1(c) of the Administration Agreements, the Administrator is not obligated to take any action with respect to a non-ministerial action unless the Administrator shall have received instructions from the Indenture Trustee under the Indenture or from the Owner Trustee or the owners of the respective Issuer under the

---

[16] A true and correct copy of this letter is attached as Exhibit 9.
[17] *See id.* at Exhibit C.
[18] A true and correct copy of this Issuer Order is attached as Exhibit 10.

Trust Agreement.

41.     Based solely upon the "Issuer Order" instruction to cause the payment of the Odyssey invoices, on February 17, 2016, the Administrator sent the Indenture Trustee a Monthly Issuer Orders ("MIOs") to release the funds necessary to pay the Odyssey invoices.[19] In a letter accompanying the MIO, the Administrator also expressed its concerns as to whether Odyssey was validly appointed as a Servicer or a replacement Special Servicer under the Indentures or the Special Servicing Agreement and that the Odyssey invoices lack sufficient authorization, detail, and backup to warrant payment. The Administrator stated that, "[a]bsent the Issuer Order, the Administrator would not have submitted the Invoices for payment[.]"

### Request for Relief

**WHEREFORE,** pursuant to the provisions of Minn. Stat. §§ 501C.0201, 501C.0202 and all other applicable law, the Indenture Trustee respectfully requests that this Court:

a.  Make and enter herein an Order designating the time and place when the respective parties in interest may be heard upon the matters set forth in this Petition, and that notice of the hearing be served in the manner specified in the accompanying Order and as provided by Minn. Stat. § 501C.0203 subdivision 1.

b.  Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501C.0305.

c.  At such designated time and place make a further Order as follows:

    i.  Determining whether, under the Governing Agreements, Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding;

---

[19] A true and correct copy of the MIO and accompanying letter (absent attachments) are attached as Exhibit 11.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

    ii.  If Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, resolving the conflicts and inconsistencies that arise between the Governing Agreements and the Odyssey Agreement.

   iii.  Determining that the Administrator should not provide for payment of the Odyssey invoices in its Monthly Issuer Orders submitted as of the date this Petition was filed;

   iv.  Determining that the Administrator should not provide for the payment of any Odyssey invoices submitted in the future unless the Odyssey Agreement is determined to be valid and binding under the Governing Agreements and Odyssey provides to the Administrator invoices that contain documented, verifiable descriptions of the work performed by Odyssey and funds are received by the relevant trust;

    v.  Determining that the Indenture Trustee should not pay, or cause the release of, any funds to Odyssey pursuant to the Odyssey Agreement or any Monthly Issuer Order;

   vi.  Determining that the Indenture Trustee has acted without willful misconduct, negligence or bad faith in ascertaining whether the requirements under the applicable Indentures have been satisfied;

  vii.  Directing that the Indenture Trustee and the Issuers shall not be subject to the continuing supervision of the Court for the purposes of Minn. Stat. § 501C.0205 or General Rule of Practice 417.02; and

  viii.  Granting such other and further relief as the Court may deem

11

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

lawful, just and proper.


DATED: February 18, 2016

By:     /s/ Thomas F. Berndt
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as
Indenture Trustee*

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

## Acknowledgement

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

DATED: February 18, 2016

By:____/s/ Thomas F. Berndt___
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*



usbank.com

**<u>Appendix II</u>**

**<u>Order for Hearing</u>**

**FILED**

FEB 2 2 2016

COURT ADMINISTRATOR
BY_____*KA*_____ DEPUTY

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

Case Type: Other

In the Matter of the National Collegiate
Student Loan Trusts 2003-1, 2004-1,
2004-2, 2005-1, 2005-2 and 2005-3.

File No. 62-TR-CV-16-5

## ORDER FOR HEARING ON PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTION PURSUANT TO MINN. STAT. § 501C.0201

Petitioner U.S. Bank National Association, in its capacity as indenture trustee as described in the Petition (the "Indenture Trustee"), having filed its Petition for Instructions in the Administration of Trusts Pursuant to Minn. Stat. § 501C.0201 (the "Petition") and the Court having assumed jurisdiction of the proceeding *in rem* under Minnesota Statute § 501C.0201, now, upon motion of Robins Kaplan LLP, attorneys for petitioner, hereby directs as follows:

IT IS ORDERED THAT:

1.      A hearing upon the Petition will be held before the Honorable David C. Higgs_____, District Court Judge, Probate Division, at the Ramsey County District Courthouse, Room _650_, St. Paul, Minnesota on April 18, 2016 at _1:45 p.m._____, or as soon thereafter as counsel can be heard.

2.      Notice of such hearing shall be given by publishing a copy of this Order one time in a legal newspaper of Ramsey County, Minnesota, at least twenty (20) days before the date of the hearing.

3.      The Indenture Trustee is further directed to send both this Order and the Petition (exclusive of the exhibits), without duplication, to all registered

noteholders under the indentures by first class or certified mail, postage pre-paid, at the address of such holder as shown in the note register, at least fifteen (15) days prior to the hearing date. To the extent that any of the notes are held through The Depository Trust Company, mailing of this Order and the Petition (exclusive of the exhibits) to The Depository Trust Company at least fifteen (15) days prior to the hearing date shall be sufficient. Upon mailing of this Order and the Petition to the registered noteholders, the Indenture Trustee shall complete the Affidavit of Mailing attached hereto as Exhibit A and such affidavit shall constitute sufficient evidence of mailing, so as to comply with the notice requirements of Minnesota Statutes §§ 501C.0201 and 501C.0203.

4.     Parties in interest may object to the Petition, or any of the relief being sought herein, by filing a memorandum of law setting forth their respective positions regarding the issues presented by the Petition, and serve therewith all counsel then of record in the matter, not later than five (5) days before the hearing date set forth above.

5.     The parties in interest are hereby referred to the Petition provided to them and on file in the office of the Court Administrator for a specification of the matters to be considered at the hearing.

Dated: February 22 , 2016

_Kimberly F. Smith_
Deputy Court Administrator
Ramsey County District Court

Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone: (612) 349-8500
Fax: (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*